JOHNSON *v.* BURGHORN.

1. WATERS AND WATERCOURSES—NAVIGABLE STREAMS—RIPARIAN RIGHTS.

   The owner of lands bordering on a navigable stream owns the submerged lands to the thread of the stream, subject only to the easement of navigation which the public may have therein, and he also owns the ice covering the surface of the water over the submerged lands, and any interference with these rights constitutes a trespass.

2. SAME—TRAPPING A PROPERTY INTEREST.

   The right of trapping is a property interest.

3. SAME — TRAPPING — INJUNCTION — TRAPS ATTACHED TO SUBMERGED LANDS OR ICE.

   The riparian owner of lands bordering on a navigable

For authorities passing upon the question of injunction against hunting or fishing on navigable waters, or against interference therewith, see notes in 17 L. R. A. (N. S.) 1236, and 38 L. R. A. (N. S.) 286.

stream, having the exclusive right to trap thereon, is entitled to an injunction restraining trespassers from entering upon his lands and from attaching traps to the submerged lands or to the ice covering the same.

Appeal from Ottawa; Cross (Orien S.), J. Submitted June 15, 1920. (Docket No. 91.) Decided September 30, 1920.

Bill by Charles Johnson against James Burghorn to restrain the trapping of muskrats and other fur-bearing animals. From the decree rendered, plaintiff appeals. Enlarged, modified, and entered in this court.

*Daniel F. Pagelson.* (*Gerrit J. Diekema* and *Charles E. Misner*, of counsel), for plaintiff.

*Louis H. Osterhous*, for defendant.

STONE, J. The bill of complaint herein was filed to restrain the defendant from trapping and otherwise taking muskrats and other fur-bearing animals from the property known as Eastman's or Johnson's Island, in Grand river, in the county of Ottawa. The appended map or plat, taken from the record, was introduced and used in evidence upon the hearing of the case. It will aid in an understanding of the situation. We compile from the stipulated statement of facts the following:

That the plaintiff is the owner by grant and in actual possession of the lands described in the bill of complaint, and has been in such actual possession, and has occupied said lands for farming purposes for 25 years and upwards; that he obtained title to said premises by deed of conveyance, under date of December 28, 1892, from the owners of the land adjoining to and abutting upon Grand river; that said premises form an island in Grand river, between the village of

Spring Lake and the city of Grand Haven, and were
formerly a part of the submerged lands owned by the
owners of the upland abutting upon Grand river, and
are opposite to such lands; that said island is bounded
along the northerly side by a channel or ditch dredged
through the island as it originally existed many years
ago, from the open water of Grand river at the west-
erly or down-river end to the up-water of Grand river
at the easterly or up-river end, by the then owner of

the island; and on the westerly, southerly and easterly sides by the waters of Grand river, and that the main channel of said Grand river is at the westerly and southerly boundaries of said land.

That in surveying sections 21 and 22, of which said island is a part, the United States government surveyed only such portions of said sections as were unsubmerged by the waters of Grand river; that it meandered the lines of Grand river upon both sides thereof and around the said island as a navigable stream, and did not survey the bed of said river or any part thereof; that said Grand river was and is recognized by the United States government and its surveyors as a navigable river, and is treated as such, and it has ever been and is now navigable in fact and within the meaning of the law; that the United States government never, by express grant, sold or conveyed to the State of Michigan, or any one else, the bed of said river, or the soil of sections 21 and 22 submerged thereby, but conveyed, granted and sold only such fractional portions of said sections as were unsubmerged by the waters of the river.

That plaintiff claims ownership of the bed of the river and the soil submerged thereby adjacent to and adjoining his lands to the thread or middle of the stream. He does not take the same by express grant or patent or act of congress from the United States, or from the State of Michigan, but by virtue of his conveyance and as an incident to his ownership of a part of the surveyed fractional section to the center line or thread of the stream such ownership and title is conceded by the defendant.

That the plaintiff by virtue of his aforesaid ownership of, and title to, the bed of the stream adjacent to said lands to the thread of such stream, claims an exclusive right to trap for muskrats and other aquatic animals in and upon the waters of Grand river cover-

ing the soil submerged by the waters adjacent to his lands to the thread of said stream, and denies to the public any interests in or rights upon the said submerged lands and waters covering the same, other than the right of navigation.

That upon said island there is a bayou extending from the open water of Grand river at the westerly end of said island up approximately through the center of said island three-eighths of a mile long, and varying in width from 200 to 400 feet; that the center of the down-river end of the bayou at its opening into the main channel is from three to five feet deep, and slopes and shoals so that at the easterly end of the bayou it is not over six inches in depth. There may be places in the bayou where it is deeper, but in these it rarely exceeds three feet, and that the entire bayou is covered with grass and weeds during the greater portion of the year, but the same may at all times be navigated by small boats; that said plaintiff, about the middle of the month of December, 1919, placed and caused to be placed notices upon said premises informing the public and this defendant that no trapping or hunting was to be permitted thereon, in accordance with the statute in such case made and provided; that said defendant knew that said signs had been placed upon said premises and had been informed by the plaintiff that he must not trap upon said premises, and must not in any manner invade said premises; that said lands in the upland and said submerged lands are valuable for the taking of muskrats and other aquatic animals whose hides may be used for fur, and that this plaintiff has realized large sums of money from the taking of muskrats by means of traps from said premises to the extent of $1,000. That said defendant, after the notices were placed upon said premises, and after he had been notified by the plaintiff not so to do, did enter in and upon said

premises and did place traps upon said premises, and did take therefrom a large number of muskrats all of the value of to-wit, $500. That said defendant, even after he knew of the notices and after he had been notified by said plaintiff so to do, has refused to remove his traps from said premises, and continued to maintain traps thereon until he was enjoined by the order and injunction of the court, and that since said time he has removed his traps from said premises.

The defendant claims no right either in himself or in the public to trap in the waters of the channel or ditch forming the northerly boundary of said lands, which ditch was established by the act of a previous owner, and now forms the northerly boundary and a portion of said lands to which plaintiff has absolute title by grant and conveyance, and claims no right either in himself or in the public to trap upon any part of the premises described in the bill of complaint above the ordinary high-water mark of Grand river along the westerly, southerly and easterly sides thereof, and concedes plaintiff's right to restrain him and any of the public from hunting or trapping thereon, without his consent. The defendant denies that the plaintiff has any exclusive right in, over and upon the water of Grand river along the westerly, southerly and easterly sides of said island, and claims that the public has a right to navigate the said waters, to fish therein, to shoot duck and other wild fowl and to otherwise hunt thereon, and to trap for muskrats and other fur-bearing aquatic animals therein, on all parts of the same between the ordinary high-water mark and the thread of the stream, either from boats during the open season of the year, or through the ice during the seasons when the river is frozen over; and claims that plaintiff's title of ownership of and control over the soil under the waters of said Grand river are subservient to the public right of navigation, fish-

ing, hunting and trapping in and upon said waters, and over and upon such submerged soil either from boats in the open hunting and fishing season, or upon and through the ice in the winter season.

That the particular and only question involved in this case and to be determined herein and hereby is, as claimed by defendant, whether or not the public, against the objection of the riparian owner who by virtue of, and as incident to his ownership, grant and conveyance of land bordered by the navigable waters of Grand river, and similar navigable waters and rivers in this State, has title to the bed of the stream to the thread thereof, subject to the public rights in, over and upon such waters for the purpose of navigation, the right to fish and the right to hunt and trap in, over and upon such waters between the ordinary high-water mark thereof, and the thread of the stream, as an incident to, or in addition to a right to navigate such waters; and in so fishing, hunting and trapping, to anchor a boat to the bed of the stream, and to anchor or attach a trap to the submerged lands and to place a trap thereon for the purpose of securing aquatic animals therein, either by stakes to the bed of the stream, or to the ice formed thereon, to cut holes in the ice covering such submerged lands for the purpose of placing such traps upon the submerged lands, contrary to the wishes and in direct opposition to notice given by the owner of the lands.

At the hearing, the learned circuit judge, after stating that it was admitted the defendant had no right to hunt or trap upon the uplands of plaintiff, but that he claimed the right to hunt, trap and fish upon the navigable waters of Grand river, even though plaintiff owns the land to the thread of the stream as an incident to his ownership of the land along the banks of said river, was of the opinion that the defendant and all other persons have the right to use the

navigable waters of this State between ordinary high-water marks, for boating, fishing, trapping and hunting purposes, "if access is gained to said waters without committing a trespass." The trial court therefore ordered that a permanent injunction should issue restraining the defendant from hunting, fishing or trapping upon all of the lands of the plaintiff, as described in the bill of complaint, *except* over and upon the navigable waters of Grand river between ordinary high-water mark along the westerly, southerly and easterly sides of said land; and a decree was entered accordingly. From this decree the plaintiff has appealed.

It is practically admitted by the defendant that the plaintiff is the owner of, and in possession of, the lands described in the bill of complaint, and that the description covers the lands in question, where the defendant had set his traps; that the plaintiff is the absolute owner in fee of the upland and the submerged land covered by the waters of Grand river, subject only to the easement of navigation which the public may have therein.

It is the claim of the plaintiff that the defendant placed traps upon the lands of said plaintiff, as described in the bill of complaint, and also placed them on the shores of said land in the waters of Grand river where said waters were from two to six inches deep; that he placed such traps in the so-called cut or ditch on the northerly side of said island, along the shores of said bayou extending within said island, and on the easterly end of said island; that the waters of Grand river, the main channel thereof, flow along the westerly, southerly and easterly sides of said island, and a portion of such waters form a shallow bayou extending some three-eighths of a mile into this island, and that this bayou, in the summer time, is filled with weeds and grass, and that the entire island is surrounded with weeds and grass extending from its shores.

Defendant admits that he has no right to place his traps in the ditch, drain or channel on the northerly side of said island, nor in the non-navigable waters about said island; but claims a right to place his traps on the submerged lands of the river, and to anchor a boat to the bed of the stream in the submerged lands, and in the ice covering such submerged lands in the winter time, for the purpose of trapping for such animals in the navigable portions of Grand river.

It will be observed on an examination of the record that by the answer and statement of facts, together with the findings and decree of the court below, it is sought to inject into the case the questions of hunting and fishing. Under the bill of complaint and facts as agreed upon, there is no question before this court regarding hunting and fishing, and the only question for this court to decide is in regard to trapping, and we shall confine ourselves to that question.

As we understand the case, there are two propositions for this court to pass upon:

(1) Who is the owner of the submerged lands bordering on navigable waters such as Grand river?

(2) Who has the exclusive right to trap and take the fur-bearing animals in such waters?

We have spent much time in examining the numerous decisions of this court upon the questions here involved, and kindred questions:

1. As has been stated, it is conceded in the answer and in the statement of facts that the plaintiff is the owner of the lands described in the bill of complaint, and that said description covers all of the property shown in the map or plat hereto attached. The owner of the shore lands owns the submerged lands connected therewith to the thread of the stream. *Lorman* v. *Benson*, 8 Mich. 18 (77 Am. Dec. 435); *Clark* v. *Campau*, 19 Mich. 325; *Bay City Gas Light Co.* v. *Industrial Works*, 28 Mich. 182; *Fletcher* v. *Boom Co.*,

51 Mich. 277; *Sterling* v. *Jackson*, 69 Mich. 488 (13 Am. St. Rep. 405) ; *Campau Realty Co.* v. *City of Detroit,* 162 Mich. 243.

The owner of the land not only owns the submerged lands to the thread of the stream, but also owns the ice covering the surface of the water over the submerged lands, subject to such rights, if any, that other riparian owners may have, and any interference with these rights constitutes a trespass. *Lorman* v. *Benson, supra; People's Ice Co.* v. *Steamer Excelsior,* 44 Mich. 229 (38 Am. Rep. 246) ; *Bigelow* v. *Shaw,* 65 Mich. 341; *Hoag* v. *Place,* 93 Mich. 450 (18 L. R. A. 39) ; *Grand Rapids Ice & Coal Co.* v. *South Grand Rapids Ice & Coal Co.,* 102 Mich. 227 (25 L. R. A. 815, 47 Am. St. Rep. 516).

It also has been held by this court that the gravel in the bed of a navigable stream, as between private parties, is owned by the abutting property owner, to the thread of the stream. This also has been the holding of the United States Supreme Court. *McMorran Milling Co.* v. *Little Co.,* 201 Mich. 301, 317; *Archer* v. *Gravel Co.,* 233 U. S. 60 (34 Sup. Ct. 567) ; *Wear* v. *Kansas,* 245 U. S. 154 (38 Sup. Ct. 55, Ann. Cas. 1918B, 586).

2. Counsel have discussed the question: Who has the exclusive right to trap and take fur-bearing animals in these waters? The industry of counsel and our own examination have failed to find much direct authority upon the subject of trapping on submerged lands. It is virtually conceded in this case that in order to trap upon these submerged lands it is necessary to anchor the traps by stakes or otherwise to the submerged lands if the waters are not frozen over, and to cut holes in the ice covering such submerged lands for the purpose of placing such traps in the winter season.

It is claimed by plaintiff that this court has held

that the riparian owner has the exclusive right of hunting upon the submerged lands covered by navigable streams, and a clear distinction is made between lands bordering on navigable streams and lands bordering on the Great Lakes. *Ainsworth* v. *Hunting & Fishing Club,* 153 Mich. 185 (17 L. R. A. [N. S.] 1236, 126 Am. St. Rep. 474, 15 Ann. Cas. 706) ; *Same* v. *Same,* 159 Mich. 61. In the last cited case as reported in 159 Michigan, this court, speaking through Justice GRANT, said:

"The sole question now before us is whether Munoskong Bay is included in the waters of Lake Huron, or whether it borders on the river. If the former, the defendant has no exclusive rights of hunting and fishing, and the decree of the court is right. If the latter, then the defendant owns the subaqueous land to the middle thread of the river, and the decree is wrong."

See, also, *Hall* v. *Alvord,* 114 Mich. 165 (38 L. R. A. 205) ; *Sterling* v. *Jackson, supra.*

It is the contention of plaintiff, and in this we think he is correct, that the defendant had no right to anchor his traps in the submerged lands, or to cut holes in the ice and fix stakes thereto, holding traps. That the party whose private possession has been thus interfered with has a right of action for the protection of his property has, we think, been passed upon and sustained by this court. *Giddings* v. *Rogalewski,* 192 Mich. 319, at p. 326; *Winans* v. *Willetts,* 197 Mich. 512, 518; *Marsh* v. *Colby,* 39 Mich. 626 (33 Am. Rep. 439) ; *Burroughs* v. *Whitwam,* 59 Mich. 279.

We think the right of trapping is a property interest. *St. Helen Shooting Club* v. *Barber,* 150 Mich. 571.

That plaintiff has suffered such an irreparable injury as invokes the aid of a court of equity is, we think, clear. *Ainsworth* v. *Hunting & Fishing Club,* 153 Mich. 185, 190; 22 Cyc., pp. 763, 764.

The learned trial judge, in his findings and decree, held that,

"the defendant and all other persons have the right to use the navigable waters of this State between ordinary high-water marks for boating, fishing, trapping and hunting purposes, if access is gained without committing a trespass."

Just what the learned trial judge meant by the expression "without committing a trespass" it is difficult to understand, for it seems to be conceded that in order for the defendant to successfully trap for muskrats upon the property in question, he must fasten his traps by means of stakes or otherwise to the submerged lands, or to the ice covering the same. This would constitute a trespass by "invading the close" of the plaintiff.

In *Sterling* v. *Jackson, supra,* Justice CHAMPLIN, in the prevailing opinion, said:

"The defendant claims that he had the right to shoot the wild fowl from his boat, because, as the waters were navigable where he was, he had the right to be there; that, there being no property in wild fowl until captured, if he committed no trespass in being where he was, no action will lie against him for being there and shooting the wild duck. There is a plausibility in the position which, considered in the abstract, is quite forcible, and, if applied to waters where there is no private ownership of the soil thereunder, would be unanswerable. But, so far as the plaintiff is concerned, defendant had no right to be where he was, except for the purpose of pursuing the implied license held out to the public of navigating the waters over his land. So long as that license continued, he could navigate the water with his vessel, and do all things incident to such navigation. He could seek the shelter of the bay in a storm, and cast his anchor therein; but he had no right to construct a 'hide,' nor to anchor his decoys for the purpose of attracting ducks within reach of his shotgun. Such acts are not incident to navigation, and in doing them, defendant was not

exercising the implied license to navigate the waters of the bay, but they were an abuse of such license."

In our opinion the decree of the court below should be enlarged and modified, and one entered here restraining the defendant from entering upon the lands of the plaintiff, and from attaching his traps to the submerged lands, or to the ice covering the same, upon the premises described in the bill of complaint, giving the plaintiff the exclusive right to trap thereon.

We refrain upon this record from passing upon the questions of shooting and fishing as not being involved in this case, and as presenting a moot question.

The decree will therefore be enlarged and modified, and one entered here in accordance with this opinion, with costs to the plaintiff.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.