STATE OF MICHIGAN *ex rel* ALLEGAN PROSECUTOR v THE
SUMMER SCHOOL OF PAINTING AT SAUGATUCK, INC (ON
REMAND)

Docket No. 70123. Submitted March 16, 1983, at Lansing.—Decided
May 18, 1983.

The Allegan County Prosecutor brought an action in Allegan
Circuit Court seeking a mandatory judgment enjoining defen-
dants, The Summer School of Painting at Saugatuck, Inc., and
Mary K. Bettles, from interfering with public use of the waters
of Oxbow Lake. Defendants argue that the lake is a private
lake with no navigable entrance, surrounded entirely by pri-
vate property and that the public has no right to trespass
thereon. The trial court held that Oxbow Lake is a public lake
that can be used by the general public so long as governmental
agencies do not prohibit such use. Further, the trial court held
that the swamp or channel that exists between the Kalamazoo
River and Oxbow Lake is navigable and may be used as a
means of ingress and egress so long as a recreational boat with
passengers aboard can pass along it without touching its bot-
tom. The court enjoined defendants from interfering with or
prohibiting public use of Oxbow Lake, George R. Corsiglia, J.
Defendants appealed and the Court of Appeals affirmed the
trial court's ruling that the swamp or channel between the
river and lake is navigable but reversed the court's ruling that
defendants did not own to the thread or middle of Oxbow Lake.
The Court remanded the case to the trial court with instruc-
tions to enter a judgment in favor of the defendants, 105 Mich
App 550; 307 NW2d 87 (1981). Both parties applied for leave to
appeal to the Supreme Court, which, in lieu of granting leave
to appeal, remanded the case to the Court of Appeals for
reconsideration, 417 Mich 914 (1983). The Court of Appeals
reconsidered the matter as instructed. *Held:*

1. The Court of Appeals prior decision on the issue of the
navigability of the swamp or channel is reversed. The "recre-
ational use" test utilized by the Court of Appeals in its prior

REFERENCES FOR POINTS IN HEADNOTES
[1] 78 Am Jur 2d, Waters §§ 61, 66.
[2] 78 Am Jur 2d, Waters §§ 262, 274.

decision has been rejected by the Supreme Court in subsequent cases. The proper test of navigability of a stream is the "log flotation" test. The swamp or channel in this case is not legally a navigable stream under the "log flotation" test. This finding coupled with the Supreme Court's ruling that a dead-end private lake cannot be used by the public as a "highway" gives defendants the right to exclude the public from the lake.

2. The issue of whether or not defendants own to the thread or middle of Oxbow Lake need not be addressed. There is no reason for the Court of Appeals to change its position on that issue.

Reversed and remanded.

1. NAVIGABLE WATERS — INLAND LAKES — NAVIGATIONAL SERVITUDE.
   The navigability of an inland waterway depends on its potential for commercial use; an inland waterway which is usable by commercial shipping or which is capable of floating logs or timber is navigable.

2. NAVIGABLE WATERS — INLAND LAKES — RIPARIAN OWNERS — PUBLIC USE.
   A dead-end lake surrounded by property whose owner will not permit a boat to dock cannot be used as a highway; the landowner may prohibit the public from using the lake even though there is a navigable means of access.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *Kirby J. Goodwin,* Chief Assistant Prosecutor, for plaintiffs.

*Hoffman & Watts* (by *John A. Watts),* and *Garrett J. Troff & Associates, P.C.,* for defendants.

ON REMAND

Before: MACKENZIE, P.J., and T. M. BURNS and ALLEN, JJ.

PER CURIAM. On August 20, 1979, the trial court rendered judgment for plaintiff. Defendants appealed as of right. On April 21, 1981, this Court held that the trial court had not erred in ruling

that the swamp or channel between the Kalama-zoo River and Oxbow Lake is navigable. The Court also ruled that defendants' ownership extended to the middle of the lake. 105 Mich App 550; 307 NW2d 87 (1981). Both parties appealed to the Supreme Court. On March 9, 1983, the Supreme Court issued the following order:

"Leave to appeal and leave to cross-appeal considered March 9, 1983, and, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, the case is remanded to the Court of Appeals for reconsideration in light of *Bott v Natural Resources Comm,* 415 Mich 45 (1982)." See 417 Mich 914 (1983).

Both the trial court and this Court assumed that a body of water is navigable "if it is useful for recreational purposes". 105 Mich App 552. See *Nicholas v McDaniel,* 88 Mich App 120, 124; 276 NW2d 538 (1979), *rev'd* 415 Mich 45; 327 NW2d 838 (1982); *Attorney General ex rel Director, Dep't of Natural Resources v Hallden,* 51 Mich App 176; 214 NW2d 856 (1974). This Court stated:

"Defendants accept as the test for navigability the recreational use test, although they claim that the recreational use must be a reasonable one. The trial judge visited the site of the swamp and inspected it. Based upon his observations, and the evidence at trial, the judge concluded that the channels or 'cuts' in the swamp occurred naturally, although there existed some evidence of some chopping or cutting of brush. In light of the fact that there is uncontested evidence in the record that several persons had travelled in their boats between the Kalamazoo River and Oxbow Lake via this swamp, we cannot say that the lower court erred in ruling that the swamp or channel is navigable." 105 Mich App 553.

However, in *Bott v Natural Resources Comm,* 415

Mich 45; 327 NW2d 838 (1982), the Supreme Court rejected the recreational use test.

Before 1909, Oxbow Lake had been a part of the Kalamazoo River. However, between 1909 and 1911, the United States government changed the mouth of the Kalamazoo River. Over time, the western part of the old channel (now Oxbow Lake) connecting it to Lake Michigan and the northern part connecting it to the Kalamazoo River naturally closed.

Only private owners own the land around Oxbow Lake. Defendants are two of those private owners. The only ingress or egress into or out of Oxbow Lake is on the northeast side through a swamp owned by defendant Summer School. This swamp was not a part of the old Kalamazoo River. One can gain access to the lake through the swamp through three natural cuts. On August 12, 1978, the trial judge viewed the three cuts. He found that the north cut was the most navigable:

"[I]t was a clearly discernible way of approximately 450-500 yards in meandering length, having a depth varying from 25 inches to 3-1/2 inches. On this cut, at the point it meets the Kalamazoo River, its width was more than sufficient for the normal rowboat propelled by oars to pass and had a depth of 7-9 inches; within 25 yards, it shallowed to 3-1/2 inches and its width narrowed to approximately seven feet and at this point a flatbottom rowboat with one 150 pound person aboard bottomed out (the boat bottom rested on the bed of the channel) and one could not pass through without poling. For approximately the next 200 yards, the depth of the water in this cut did not exceed 12 inches and the weeds gradually became so thick that poling was an easier method of propulsion than rowing. The boat in question was a flatbottom boat, as previously mentioned, approximately 12 feet in length and 3-1/2 feet in width drawing approximately 2 to 3 inches of water without passengers. The bottom of this cut was sandy from the point it intersects with the river and then traveling westerly towards Oxbow for approximately 50

to 75 yards. Upon inspection, there was little or no evidence that this cut was made artificially. At the time of inspection by the court, there did not appear to be a flow of water in this cut."

After reconsidering the first issue after reading *Bott,* we feel constrained to reverse our prior decision. While rejecting the recreational use test, *Bott* reaffirmed the log-flotation test first enunciated in *Moore v Sanborne,* 2 Mich 519; 59 Am Dec 209 (1853). Thus, in order for a creek to be navigable, it must be sufficiently wide and deep to permit use for commercial purposes. 415 Mich 63. In *Moore,* the Supreme Court held that the test is whether or not a stream inherently and by its own nature is capable of being used for commerce to float vessels, boats, rafts, or logs. In *Bott,* the one plaintiff owned all the land around the lake. The only outlet was a stream eight inches deep. The other plaintiff owned most of the land around another lake. The stream in question there was only six inches deep. The Supreme Court held that neither stream was legally navigable. In the present case, the stream is at one point 3-1/2 inches deep. *A fortiori,* the stream in the present case is not legally navigable.

Furthermore, the Supreme Court upheld the rule that a dead-end private lake cannot be used as a highway. 415 Mich 60, 70. *Winans v Willetts,* 197 Mich 512; 163 NW 993 (1917). In our original opinion, this Court stated: "Oxbow Lake is a dead-end private lake." 105 Mich App 555. Therefore, defendants have the right to exclude the public from it.

Because *Bott* did not address the second issue in the present case, we presently see no reason to change our position on that issue.

Reversed and remanded with instructions to proceed according to this opinion.